Ladies and gentlemen, please rise. The court is now in session. Good morning. Please be seated. You'll notice we're one short. Justice Hedl was trapped by an airplane and tornadoes in Indiana. So, he's going to be listening this morning. I just got off the phone with him. He's going to be listening to the orals, and then he will participate and we'll speak with him afterwards. But he's with us in spirit, if not here physically. So, we're going to get started. Clerk, call the case, please. And he's not on spirit air, am I right? No, thank you. Mr. Green, good morning. Good morning, Justices. Scott Green on behalf of the Appellant Preserve Condominium Association. I wanted to start off by talking about what I see as the most important cases here. And you might think it would be Ridgewood Bay, given the importance we put on that in the brief. But I do want to point out these two Illinois Supreme Court cases. The one that we cite in our brief, which is Employers of Wausau v. Elko, which states that where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation to follow. And then in Shruck's brief, they cite the outbound Marine Corps case. We do, too, but for a different principle. But in the outbound Marine Corps case, the Illinois Supreme Court actually uses a little bit of different language. It says, however, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous. And I think I would give deference to Shruck's interpretation as far as, I mean, you could say that it's reasonable monetary worth. That's the term Judge Braun used. And you could say that Judge Braun's interpretation of the policy is not unreasonable. But it's important here to really, I think, emphasize that that's not the question. The question is whether Preserve's interpretation of this key phrase here, loss in value, is reasonable, because obviously that's what this turns on. And I think that's the piece of this that Judge Braun overlooked in going to the dictionary and saying it's monetary worth and that the interpretation that we set forth based in the insurance policy is not. And it's an undefined term in this policy. Right. And there's no dispute about that here. And so I want to give the Court three reasons why our interpretation is reasonable. And the first one, I don't, we don't even need to go into, obviously these cases say you have to construe the insurance policy as a whole. And I'm going to do that. But the first reason why, we don't even have to go outside of the ordinance and law provision itself. We don't have to go outside of coverage one itself. Because if we look in coverage one of this ordinance or law provision, it says at the outset, if a covered cause of loss occurs to covered building or structured property, we will pay under coverage one for loss in value of the undamaged portion of the building as a consequence of enforcement of any ordinance or law that requires the demolition. And it then goes on in three separate places. It does say, though, in value of the undamaged portion of the building. Correct. It does. And so how do we determine what that value is of the undamaged portion of the building? And that's the question. And in this particular provision, three separate times it tells us how we do that. It says, however, we will not pay for the increased cost of construction. Furthermore, the most we will pay for the increased cost of construction is the increased cost of construction of the same premises. Later, if the ordinance or law required relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction of the new premises. So it actually uses that phrase five times. Notice nowhere in coverage one does it say we will pay, we will not pay for the loss in market value before the event lest the loss in market value after the event. It doesn't say that. It says increased cost of construction, which is what we obviously are saying it should mean. Now, that's within the provision itself, so we don't even need to go beyond the provision. But then I would say the next reason why our interpretation is reasonable is that then if we go to the only place in this policy that value is defined, and that is the loss payment provision. This is a replacement cost policy. And in this particular policy, under the loss payment provision that we cite on page seven of our brief, it says we will determine the value of covered property as follows. At the replacement cost without deduction for depreciation subject to the following, and it says further, we will pay the cost of repair or replace after the application of the deductible and without deduction for depreciation, which then goes on to define the cost of repair or place the loss of damaged property with other property of comparable material and quality. So this is the one place in the policy where it's telling us how value is determined. Okay, so that is the second reason why we believe our interpretation of this term is reasonable. And then the third, and now I will get to the Ridgewood Bay decision, because it is, from what I could tell, and there's no other case cited by Apelli here on this particular issue. And I think the reason why is because it is a rare issue. We have a draconian ordinance here. This is a very rare circumstance where you would have this coverage, one, that brings back the full policy limit for this additional cost. It's for a situation like this where, for some reason, Joliet has decided that you cannot ever patch a roof in Joliet. That's a draconian ordinance, and Truck doesn't dispute that, and I will point out where that is in their brief. But if you go to Ridgewood Bay, it really addresses this exact issue. And while I understand that it's a trial court opinion from Minnesota, it is a trial court, and they are interpreting it exactly as we are interpreting it here. And they are doing it for the same exact reason that we are saying the court should do it here, because there was a loss payment provision that explained how you determine what the value is under that particular policy. And it says loss in value cannot be understood independently from the cost related to repair, rebuilding, or reconstruction, because that is how payment for loss would be determined within the policy. Payment for loss would be determined. And so I think if you look at Judge Braun's order, all of those points were overlooked and were not mentioned in his order, and he simply just went to the dictionary definition, the Webster's dictionary definition of value as monetary worth. And again, in this particular, when we're dealing with a policy provision that is subject to perhaps two competing reasonable interpretations, the court must in Illinois construe that in favor of the policyholder. And so, and then the question then so is, what does Truck say as to why our interpretation is not a reasonable one? And really what they say is, well, our reading of this provision would render coverage one superfluous, because we have coverage three here, which deals with the increased cost of construction, and we have coverage two that deals with demolition. And I think, first of all, with respect to what does superfluous mean, it means that it would render it meaningless. It doesn't mean that there can't be overlap in different provisions of an insurance policy as to what one covers versus another. It would have to mean that coverage one is completely meaningless or coverage three is completely meaningless. It has no, you don't even need it in this policy at all. And that's simply not the case, because coverage three only comes into effect when you have, coverage three comes into effect any time, sorry, any time an ordinance or law causes an increased cost of construction. So, and Truck in its brief comes up with a hypothetical about a garage and how it would have to be, perhaps you have to get rid of it because of a setback, which is not at all what we have here. A much more common scenario is what we see in this particular case, if you didn't have this Draconian ordinance, where sometimes you have to, in the course of repairing a roof, you may have to, especially this is true here in Illinois, you have to bring the insulation up to a certain R value. You have to increase the thickness of the insulation to meet building code here in Illinois. In the course of that, oftentimes roofers will say, well, we could do that, but really it would cost us more money to do that. It would be, and just to do it in that particular section, it's much more effective just to take off the shingles, replace the entire insulation, put new shingles back on. The ordinance didn't require you to remove all the rest of those shingles, but yet that policy provision still gets triggered all the time in that particular scenario. That does not mean that it's required. This is a different type of ordinance. This says you cannot do this. There's no reason why you can't patch this roof from a practical standpoint, from a cost standpoint, from an aesthetic standpoint, but we here in Joliet, you can't do it. That's what this ordinance does, and that's what the difference is between Coverage 1 and Coverage 3. Coverage 1 covers that situation where the ordinance says you must do this. I think if we go to the truck's brief on page 9 of its response brief, when it's talking about the ordinance, it says, however, the cost of completing repairs was drastically more due to the enforcement of Joliet's roof repair policy, which forbids any work that would result in the mixing of old and new shingles on an individual slope, and thus requires a full slope replacement, no matter the number of damaged shingles on the slope. So truck right there in its brief is describing how severe this particular ordinance is in this particular situation, and there's no dispute about that on this particular record. So I don't think that Coverage 1, the way that we read it, would render Coverage 3 superfluous. You have Coverage 3 to deal with your everyday, ordinary situation where you have ordinances and laws that increase the cost of construction, but Coverage 1 is for this really severe situation that we have in this particular case. I just want to touch on this issue of demolition because it came up for the first time in the appeal, and this is a de novo review of cross motions for summary judgment. On this particular record, there's absolutely no dispute that this ordinance required demolition, and there's nothing that truck said in response. There's no evidence that truck put forward that said that this ordinance did not require demolition, and I think that that really gets brought out. If you go to our reply brief, obviously we didn't address this in our initial brief because it didn't come up for the first time until the response, but on page 2 of our reply, we state, you know, Mr. Pose, Taylor Von Offield, acknowledged truck paid out under Coverage 2, representing the cost of demolishing the damaged shingles, and it specifically stated truck represented it had paid all demolitions amounts submitted by Preserve. We cite C719 of the record for that. That's the letter. I'm sorry. That is the actual brief from truck on this particular point. There's undisputed statement of facts where they state that, and then the appraisal award is the second item we cite where Mr. The letter that followed the appraisal award from truck indicated that it was covering all demo code line items, and so I think the only thing that truck does in its response to address that issue is to say, oh, well, under the Coverage 3, we were paying for the cost to take them off. Under Coverage 2, we were covering the part to get rid of the debris. You can divvy it up however you want. It doesn't change the fact that it was demo, and there's no dispute here that there was demolition and that this ordinance resulted in demolition, so either way, and I see that my time is yellow. No, you're fine. You still have time. Oh, okay. If it goes red, you're fine. Yeah, okay, and I think, obviously, we are asking this court on a matter of first impression here in Illinois to look to this case from Minnesota, the Ridgewood Bay case, and simply look at it for the reason that it goes into the reasonableness of our interpretation. It is evidence of the reasonableness of our interpretation of this provision, that it can be read the way that we're saying, that if truck wanted to define it the way that it's defining it as market value, it could have written the policy that way. It could have not insured roofs in Joliet with this ordinance, with this particular coverage. It chose to do so. It chose to provide for this coverage in Will County, in this jurisdiction, with this ordinance, and in this particular case, you have a binding appraisal award, and there is no dispute here that the appraisal panel determined exactly what this ordinance required in this situation, set a value for that, segregated it out in the award, and in this particular jurisdiction, that is what this ordinance triggers under this policy. Thank you. Justice Bertani, any questions? No. Thank you. Thank you, Counsel. You have a lot of time in reply.  Thank you, Counsel. Good morning, Mr. Orlando. Good morning. Good afternoon, Mr. Orlando. Good afternoon, Justices. Tom Orlando for Appley Truck Insurance Exchange. May it please the Court. Yes. Why are we here? We're here because the coverage three limit in the ordinance or law provision only has $298,000 of limits. If that limit happened to be $1.5 million, my client would have paid the entire appraisal award under coverage three, because that is the coverage that applies to the situation. But unfortunately, there's only $298,000 of limits. Preserve did not buy additional limits under that coverage, so now Preserve is trying to fit the square peg into a round hole by taking us into coverage one. But what's significant to me is that in their briefs and in the proceedings below, Preserve never argues that coverage three is not applicable here, and that's telling to me. Truck obviously paid under coverage three because we believe that's the coverage that applies. Preserve doesn't argue otherwise. They just say, oh, but coverage one applies too. So I think it's appropriate to actually start with coverage three, which is the provision my client looked at to pay this. And when you walk through coverage three, you will see how directly on point it is. So there are three coverages, obviously, under this ordinance or law coverage. Coverage three is for increased cost of construction coverage. If a covered cause of loss occurs to the covered building or structure, we will pay for the increased cost to repair or reconstruct damaged portions of the building or structure property and or reconstruct or remodel undamaged portions of that building or structure property, whether or not demolish is required. So let's look at the first part of that, repair or reconstruct damaged portions of the building or structure. Council actually alluded to this. Sometimes in today's world, old roofs have a certain insulation R value that doesn't meet current code. So oftentimes with the damaged shingles, the code says if you're going to replace those shingles, you have to be up to the R value insulation code. And oftentimes it's like it's a one and a half inch insulation, and now the code requires five inches. So that differential cost of now installing insulation boards that go from one and a half to five inches, that's the increased cost. That would go in coverage three A. Here, we're in coverage three B, because in this case, what the code said is that, well, if you're going to do the repair to the damaged shingles, you're also going to have to reconstruct or remodel the undamaged shingles, because the code doesn't want the patched look afterwards. So looking at that provision, that's what my client paid for. It paid the full limit under that coverage, because whether or not demolition was required, the fact of the matter is, is the code said if you're going to replace the damaged, you need to replace the undamaged. And so coverage three is tailor-made for this loss. The problem is it didn't have enough limits to pay for the appraisal award. So my client looked at that and said, okay, we'll look at coverage two, which is a stand-alone demolition cost coverage. If there's demolition caused by the enforcement of a building code, the coverage two applies. So my client said, we will look at the estimate, we will see what the cost of removing the undamaged shingles were, and we will pay those line items. And so my client issued the subsequent payment under coverage two. That is all the coverage that exists for this, because now let's look to coverage one. So what's key about coverage one is the phrase loss in value of the undamaged portion of the building. So we'll pay for the loss in value of the undamaged portion of the building, but only when a couple of things happen. First, there has to be a law or ordinance that requires, requires the demolition of parts of the same property and regulates its reconstruction. And here, what we were trying to state in the brief on the demolition issue is that there isn't a requirement of the demolition. There are times when there are losses. Let's say you've got a shed on the property and a fire to the main house that maybe damaged a little bit of the shed, and the code says, or the building department says, you have to take that down, period. No questions. You don't have to replace it. You don't have to do increased cost. It just has to come down for whatever. That's a required demolition. There is no requirement here, because Preserve didn't have to replace these shingles, and oftentimes insureds don't. So, for example, if you've got a 25- to 30-year-old roof that's at the end of its useful life, and you happen to have a hail or a windstorm, the insured might say, you know, we'll take this money now. We know we are going to have to do a new roof anyway. We'll take the insurance company's money. We'll put it in our reserves, and in a few years' time, we've been saving up reserves to do a new roof. At that point, we're going to replace the whole roof because we were going to do that anyway. They're perfectly entitled to do that, and they would get the actual cash value of the damaged shingles. They were not required to demolish anything. They only had to replace the undamaged shingles if they chose to replace the damaged shingles, and there was no requirement to replace the damaged shingles. And so the required aspect of this is not met, number one. Number two, it speaks to loss in value. So what's damaged here? We have damaged shingles. They obviously lost value because they're damaged. We have undamaged shingles that did not lose any value. They're undamaged. They haven't lost value. They just have to come off the roof if you're going to replace the damaged shingles. So there was no loss in value. And the $1.1 million of the repraisal award is the replacement cost of the undamaged shingles. Okay, if we have to pull them off, if we're going to pull off the damaged shingles, and so the code says we have to pull off the undamaged shingles, it's going to cost an additional $1.1 million to replace the undamaged shingles. But that's a replacement cost. That is not a loss in value. They're undamaged. They can't possibly have lost a value when they're undamaged. The purpose of the coverage, one, is that after you've gone through the exercise of demolishing whatever needs to be demolished by code and paying the increased cost to rebuild whatever you're going to rebuild, after going through that process, if what still remains standing, the building that remains, has lost its value, somehow lost its value despite the replacement, that's what's covered then is the loss in the value to the remaining building. So loss in value cannot possibly be the cost to construct something, particularly something that isn't damaged in the first place. They're two totally, totally different things, and that's what our trial judge understood. I think he said, as the circuit court said, the plain interpretation of coverage one is that it provides coverage for the decrease of value when after repair or replacement of the damaged or undamaged portion, the subject property has lost value because of the ordinance's application. It's after the fact, after all the work is done, has there been a loss in value. Here, there's been obviously an increase in value because when they do the work, when they take off all the shingles and put on a brand new roof, that building now has to be worth more than it was the day before the loss. There is no loss in value. And that's the Minnesota case did not understand that distinction and didn't address that distinction. Our trial judge did. And so the Minnesota case obviously is not binding. It's persuasive as much as the court deems it to be persuasive. But our trial judge, I think, gave it the proper reading. Now, this issue of ambiguity, it's true that, and I think counsel read from the outboard marine case, that the definition of ambiguity is you have to have two reasonable interpretations of the policy or contract for it to be deemed ambiguous. And counsel is relying, and I think he stated at the end of his argument, that he hopes that the Minnesota case will at least imbue, preserves argument with this reasonableness. But it's not reasonable because it's not reading the language of these provisions. It's not understanding. It's not giving any force to the loss in value as distinct from a replacement cost. And so it's not a reasonable interpretation. There is only one reasonable interpretation of this provision, and that's what the circuit court judge gave to it. If we look to the valuation provisions of the policy, which is what preserve says defines value, well, it doesn't really. The loss payment provision does use the word value twice, I believe, and it gives truck options as to what it can do in a loss. It could actually pay the value of the damaged building. That's how value gets used there. That is a market value concept. I've never seen it happen in all my years of doing this. Insurance companies usually do the other option, which is to pay for the repair or replacement of the damaged property, pay the cost to do that. So value isn't defined in that section. It's contextual. And, again, here there's a phrase, loss in value. It's not just value in abstract. It's loss in value. That term is not defined in the valuation provision of the policy. It's loss in value of the undamaged portion of the building. And, as I've said, the loss in value cannot equate to the cost to replace something that isn't damaged. They're two different concepts. And so we believe that the circuit judge got it right on the merits and that his interpretation not only is correct, but it's the only reasonable interpretation. And for that reason, the opinion should be affirmed. Does anyone have any other questions? I have one, and hopefully it's a good one. Yeah, I know that Judge Braun relied on the fact that if we took the landowner's interpretation that it would make other policy provisions superfluous, I think is what he said. And my question is really simple in the abstract. I mean, it is possible, is it not, that a policy can be so poorly written that that is the natural result, is it? I suppose there are circumstances where that could exist. Yeah, okay. So it's not an impossibility is my only question. In the abstract, it's not. In the abstract. I'm not implying it. That's why I asked it that way. Right. Okay, thank you. And in this way, and I think it goes to the point, though, that, and I think what the circuit court judge was getting at, and it goes back to my example I gave at the beginning, if the limits on coverage free were higher than they are, if they were $1.5 million, under Preserve's argument, this whole appraisal award would be covered under both coverage one and coverage free. And that doesn't read this provision as a whole. Counsel said you have to read the contract as a whole. You need to read, and we would say, yeah, you have to read coverages one, two, three as a whole. They provide three distinct types of coverage in this ordinance or law provision. They address different things that can happen when there's a code that gets enforced. So the goal of the three coverages is not to create that kind of overlap. And under Preserve's argument, if the limits were higher, there would be 100% overlap between these two coverages. And that just can't be right. That cannot be a reasonable interpretation of this policy, and I think the circuit court agreed with that. Thank you, sir. Thank you. Was there a transcript of this hearing? I'm going to have to defer to counsel on that because I was not involved before. Well, you have five minutes back up here, so you want to answer it when you come back up? Thank you, Mr. Armando. So you can start off with answering my question. Was there a transcript of the hearing? Yeah. I don't recall. I'm sorry. I'm just looking through the record and don't know if there was a transcript of the motion on summary judgment. Was there a transcript ever prepared? I don't actually recall seeing one. And now that I'm really racking my brain, I do believe that we attempted to get it and there was not one. That's my recollection. It's okay. Okay. I'm from the south. I'm going to say okey-doke because that's just what comes to mind. But I'm like, seriously, there's no transcript? Okay. So go ahead. You've got your five minutes. Thank you. All right. And, again, deference to Mr. Orlando, very compelling explanation of how this policy should work and why you should read it this way because it makes sense to do it this way. And I just come back to if they really wanted it to say what Mr. Orlando was saying, it says they could have wrote it that way. And it doesn't, just because his interpretation of this provision sounds good, doesn't mean that ours is unreasonable. And in order for it to say that ours is unreasonable, you have to ignore first and foremost the provision itself. And I just want to come back to that because I do think it's so important that it consistently explains how this policy pays out under this provision. I mean, it says increased cost of construction. That's the only place in this provision that explains how truck pays under this particular provision. It doesn't do anything about any sort of market value analysis. It doesn't explain, oh, we will not pay for the loss in market value. It doesn't say that. It says we will not pay for the increased cost of construction. And I do think that I wanted to just address this one point. I think Mr. Orlando said insured didn't have, preserved didn't have to replace the damaged shingles. Well, this is an insurance loss. They had a storm. They had damage. There's an insurance claim. And then you had an appraisal panel setting forth exactly what the amount was to replace the damaged shingles. And here you have this ordinance that says you can't do that. You can't replace the damaged shingles just on their own. I mean, if you could have them, there's no evidence in the record that says my client wouldn't have gone and done that. But they could not. And that's what the panel said. That's what Truck said in the record, that it was paying out for this portion of the award because that's what this ordinance required. And with respect to the limit issue, the coverage one, it doesn't have a specific monetary limit to it. It's the policy limit. It's the policy limit. And so, again, Mr. Orlando has used a hypothetical here as to, oh, well, coverage three could, in theory, have a limit that is the same as coverage one. But that's not in this particular policy. That's not this particular policy. This particular policy has a very specific limit for coverage three. Coverage one has the policy limit. And the reason we suggest under our interpretation that it would have the same limit as coverage two is because there is such a draconian ordinance that requires demolition of the undamaged portion of the policy, requires it. And, in fact, the Ridgewood Bay actually does go into this meaning of the word required. I don't think we have to get into that here because I don't, again, I would suggest on this record, on a de novo review of cross motions for summary judgment, I would suggest that there is no dispute about what this ordinance required. But in Ridgewood Bay, the court talks about how it's not de jure require. It's de facto require. And so it's the actual impact of the ordinance itself that it requires you to do something that you otherwise wouldn't have to do. Again, I don't think we have to get to that here because, again, the record is, I think, pretty clear on that particular point. And if there's no further questions, I would rest on those. Justice Bertoni. No, thank you. Thank you. Thank you. Thank you. At this point, Justice Hedl is going to be listening to the oral arguments, and then the three of us will come further after, and an opinion will be issued in due course at this point. Thank you, counsel, for the arguments this afternoon. I appreciate it. The Court will stand at recess at this time. Thank you.